We're happy to hear argument in our first case, Ramey v. Trumble, No. 12-1244. Mr. Simpson. Thank you. Good morning. May it please the Court, my name is John Simpson and I represent the appellant, Alex Ramey, in this bankruptcy appeal. I think it would be helpful to get some context for the issues in the appeal by going through a short chronology of events in this case. The petition was filed in November of 2009. My client, the appellant, signed the petition as the 50% owner of this partnership and a general partner. In January of 2010, just a couple of months later, the trustee's law firm was seeking to recover a $200,000 claim against my client or one of his clients, against the appellant. There is a copy of the demand letter dated January 22, 2010, on that claim, Joint Appendix page 253. The following March 2010, the trustee submitted an application to employ Natalie Hoffman as a realtor to sell the property. This bankruptcy estate consisted of basically a single asset, so the value of real estate was 130-some odd acres of land. Two days later, there was already a signed cash offer to purchase this property for $1.2 million. This was two days after the trustee had submitted an application to employ Ms. Hoffman. They'd already received a $1.2 million cash offer for the property. When did you say the application to hire the law firm was? The application to hire the law firm was in June. This is the application to hire a realtor. That had not even been approved yet, and they'd already received an offer. That realtor had already received an offer to purchase the property for cash, $1.2 million. It just shows how valuable and marketable this property was. What practical outcome are you seeking here? What do you want? Obviously, you want the trustee's sale to be invalidated, but then what? I think, first and fundamentally, there's the issue of the disinterest of the trustee. My question, though, is what are you asking for? What specifically are you seeking? We're asking that the trustee be removed, and that with respect to what remedies, if any, should flow from the fact that the trustee was not a disinterested party at the time the sale was conducted. That should be remanded back to the bankruptcy court, because there hasn't been any fact-finding. There's been no real development of what remedies, if any, would be appropriate for this, whether there should be monetary sanctions, what harms, if any, flow from this as to what parties. So you're not even saying, then, that you want the sale set aside? We believe that the sale should be set aside because it was conducted when the trustee was not a disinterested party. That disqualified him from acting as the trustee in this case, and therefore the sale should be invalidated. Can you cite a case in which a sale has been set aside in the absence of a firm higher offer? I cannot cite a case that says that, Your Honor. So my understanding is that your argument, your entire argument, lies and falls on our determination of whether the trustee should not have acted here and should have disqualified himself. If we conclude that there is no conflict, there's no way you can win on any of your claims. Is that correct? I think if the court was to conclude that the record is such that the trustee was not a disinterested party, I think that is a real problem. I think there's another issue, though, in terms of the disqualification. Just answer my question first. If we should conclude that there was no conflict with the trustee, he acted properly in representing the estate, that forecloses a bunch of your arguments. Is there any argument left? Before the court gets there, there's an issue of whether there was a proper disclosure in the first place. No, no, no. We have resolved all those issues against you. There's a proper disclosure, the trustee acted properly. Then is there anything left to your case? If the court was to do that, then I would concede that there's nothing to do. I would intend that there's no factual basis that would allow the court to do that. What is the conflict that you would have the trustee disqualified for? I've had trouble finding exactly what it was. Okay. As of January 2010, one of the lawyers in the trustee's law firm was representing one of their clients on a $200,000 claim against my client, who was the 50% owner of the debtor partnership. The same fellow who valued the property at $15,000 originally when they filed the case? That's right. I understand that. My question is, what is the conflict? Identify the conflict that you're talking about and the rules that apply to it. What is it? The reason I was trying to go through that chronology is because I want to point out that as of March, fairly early on in this process, it was apparent, it was clear that this property would be put and would be sold for more than would satisfy all the claims, all the creditor's claims on the property, which meant that parties like my client were interested parties and that they would have received a surplus after all those claims had been paid. What about parties like the underlying debtors who had been pushing to effectuate the sale so that they could be paid and their interest in proceeding? I think that's a good point. The problem is when you look at the trustee's duties, I think it's 704. I'm trying to find the exact language for it, but the issue is a tension between the duty to expeditiously wind up the estate, but there's a qualifier for that insofar or as consistent with the best interest of the estate. Can I stop you right there? I understand it. Are you listening to me, sir? Yes, I am. Okay. As I understand it, the other person in the law firm represented a creditor for the estate, the creditor of your client. That's right. And then this lawyer at issue here in the same law firm represented the estate, separate entity. So where's the conflict? The conflict is, and the reason there's a problem here is it goes back to the disclosure requirement that I tried to touch on earlier, Rule 2014. And you say that it requires the lawyer that is representing the estate to tell a possible owner of an asset of the estate that it is also representing a separate corporation going against that owner. Is that what your submission is? Any party, yes, because what Rule 2014 says is that, in its plain language, the application shall state to the best of the applicant's knowledge, in this case it was the trustee, all of the person's connections with the debtor, creditors, and any other party in interest. And because my client was one of the owners of this debtor that would have received and was in a position to receive a surplus of the sale of this property, he was a real party in interest. Well, why is it a conflict, though? And then under what rule is it a conflict? It looks to me like that the person representing Wells Fargo, that lawyer, had every interest the same as the estates, which is to maximize the recovery so they get paid. Their interest was once the property could be sold for $1.2 million, and the record is that there were offers to purchase that property for $1.4 million, as of prior to the time the property was sold. Was there ever a firm higher offer? Than the $1.2 million? No, than the $3 million. There was a $1.3 million, a $1.4 million, and then it sold at private auction with three bidders present in this expedited period, far less than the court had originally stayed the mortgage, the bank's request to lift the estate so they could foreclose on their mortgage. The court said, we want to give the trustee six months to sell this property. This sale took place three months after that. But to get back to your point, the conflict is when the- I think I'd like to hear the answer to Judge Duncan's question. Was there ever an offer to buy the property for more than $3 million? I think yes or no is the best way to help him with that. No, because what happened was the property was sold at a private auction. There were three bidders that were there, and the court went ahead right after the auction- It was on the steps of the courthouse. It wasn't private. I'm sorry? It wasn't a private auction. It was on the steps of the courthouse. It was conducted-that's correct. It was a quick public auction. A quick public auction, notice given to the parties that had indicated an interest to purchase the property. It was sold at that auction and confirmed by the court right then and there. Well, what's the problem with that? The court didn't say you had to take. You said that the court entered a ruling directing the trustee to market the property for six months, but it didn't. It simply allowed six months. And it did that because it was being pressured by the debtors who quite legitimately wanted to get paid. The court-I think we can-what exactly the court said- If the trustee has not filed a motion to sell the real property identified in Jefferson Security Bank's motion by November 27th, counsel for Jefferson Security Bank may request a hearing. And I'll just direct the court's attention to two different places where the court indicated its intention with respect to six months. The joint appendix, page 104 of the court-that's on the May 27th hearing. The court ordered that the consideration of the bank's motion be continued, quote, to allow the trustee a period of six months to market the property. Correct. To allow. That's right. Six months to allow-six months for that to happen. Right. To allow the trustee six months to market the property, and if the trustee-and in the language that I referred to. Well, that's true. And what I was trying to address earlier, and there's a case that I would like to draw the court's attention to, and this goes to this issue of Section 704A1 regarding the trustee's duty to close the estate as expeditiously as possible. As is compatible with the best interests of the parties in interest. So it's not just we've got to get this thing done immediately. There's a tension, especially when you have a situation where there's going to be a surplus that would be distributed to the owners of the debtor. And in that situation, I'd like to bring the court's attention to In Re Physis. It's 257 Bankruptcy Reporter 112. It's a bankruptcy court case out of the District of Massachusetts in 2001. And there the court noted, and I think this is what we're getting at here, trustees must understand that acceptance of conventional and expedient methods do not necessarily fulfill their fiduciary duty to the parties in interest of the estate. The trustee owes a duty to the debtor to maximize value, particularly where there is a real chance that all creditors may be paid in full and the debtor may receive the funds back. That's the problem. But didn't that happen here? I mean, what you have at bottom, your complaint is that you didn't get as much surplus as you might have liked, even though you got far more than the initially assigned value. And if the property was worth $10 million, would that matter? If the property was worth $15 million, would that matter? It would matter if you had an offer on the table. If there wasn't a marketing effort that would have produced that offer, if the trustee rushed to sell the property. The trustee filed his motion to sell this property on May 24th. Originally the property was going to be sold by July 8th. That was completely contrary to what the court had said in terms of we need to allow, like they told the bank, we need to allow six months for the trustee to market this property. Mr. Simpson, your client and the lawyer for your client knew this for a long time and allowed it to go on. And in the meantime, knowing that, your client allowed everybody to change positions. And that's sort of the quintessential definition of the predicate for an estoppel, which is what they argue. Why aren't you estopped? First of all, I don't think you can waive the disclosure and the disinterestedness requirements of the bankruptcy code. Secondly, there's no reliance. There's a big difference in the law between waiver and estoppel. And their point is not that you waived it, it's that you're estopped. Because what you did is, knowing all the facts, you allowed everybody to change positions. And what you did then was see whether you got $3 million, and now you think you can up your ante and do better. That's what they say. But still, it's estoppel. That's their point. And I didn't see anything in your reply brief about the real issue of estoppel. I think we did address that in the reply brief. I know. I didn't see any substance to it. Well, there was no reliance, Your Honor. Also, I think the record is clear that June 22nd, before the disputed trustee sale, the debtor had objected to it and had stated in their objection the issue of the timeliness of this, that this is rushing to sale, and the court had indicated that at least six months should be allowed. You objected to the sale, but you didn't object to the conflict. That's correct. And you let the conflict, knowing that it happened, if there was one, go on and you held your cards until you saw whether, not you, but your client did, until everybody changed position, is the point they're making. And it looks like it's a pretty good one, and I'd like to hear it. Well, if my client had gone along with the sale, said, let's do this, and then it turned out they're complaining about the sale, I agree with you. That would be a problem. But that's not what we have here. Thank you. Ms. Davis? May it please the Court, my name is Mary Vince Davis, and I represent Robert Trumka, the trustee in the present action. There are four reasons why this court should deny Alex Ramey's petition for appeal and deny the request of relief. First and foremost, McNeer, Highland, McMunn, and Varner, and Robert Trumka, were disinterested under this code section 11 U.S.C. 327 A and C. Okay, so spell that out a little bit more. What does that mean? With respect to section 327, this is the requirement or the allowance of the trustee to hire an employee for various purposes in the administration of a bankruptcy estate. Section 327 A provides that the employee may hire a person who is disinterested and does not have a conflict with the particular estate itself. This disinterested person standard is the crux of the argument that Alex Ramey has been making throughout the course of this appellate proceeding. 327 C appears to be, for all intents and purposes, a carve-out of 327 A. 327 C provides or covers a, it's a broad exception to it. It doesn't disqualify because the attorney representing the trustee previously represented a creditor unless there is an objection by a creditor and the U.S. trustee in which case the bankruptcy court is to disqualify the employee unless there is an actual conflict. So we have to look at the issues of disinterestedness and conflict when we look at this case. So if the law firm had not gotten out of the case, there would be a conflict? Because I think the previously was in there somewhere. They were previously not in the bankruptcy case itself. The law firm represented Wells Fargo, which was not the creditor, against Alex Ramey, who was a partner of the Bonnier Partnership. I got you. When we look at this disinterested standard, though, we have to look at what Berg v. Johnson has set forth. It doesn't even come, according to you, it doesn't even come within the statute because the law firm represented the individual here and the trustee was representing the bankruptcy estate. That is absolutely correct. So the disprovision wouldn't seem to apply at all. Yes. First and foremost, we believe that this doesn't apply and that there isn't an issue with disinterestedness or with the conflict of interest. But I feel it important to address Alex Ramey's concerns and problems he has with the trustee's administration of the bankruptcy estate. Why? They tie into his other requests that the trustee be removed. Could you explain to me what would be the consequence of a finding of disqualification? Because as I tried to explore with Mr. Simpson, and he seems to be suggesting that it need not necessarily involve setting aside the sale, which I thought was the whole thrust of appellant's claim. What would happen if there were a finding that the trustee should have been disqualified? If there were a finding that the trustee should have been disqualified, the trustee would lose any fees on the matter. That would be something that could happen. I was under the impression as well, Justice Duncan, that across Mr. Ramey's argument was an overturn of the sale. We cannot overturn the sale in this particular situation. It was to a bona fide purchaser. And that's what I was trying to understand. If we didn't agree with anything you said and found a conflict and found that the trustee should be disqualified, it wouldn't necessarily seem to lead to a setting aside of a sale to a bona fide purchaser. It would not, and I do not believe it could lead to a set aside of a sale. The simple fact of the matter would be that there would be a reduction in fees or a wiping out of the trustee's fees, and there could possibly be some additional bankruptcy court damages, I think, if we went down the path of what could happen. But it's not necessary to go down the path of what could happen  A conflict check would not have revealed a conflict of interest because the original conflict would have been between Alex Ramey and Wells Fargo. When Robert Trumbull was appointed trustee, he was appointed trustee for Bonaire Partnership, and Wells Fargo was not a creditor of Bonaire Partnership. So when we look at this disinterested standard, the primary question becomes, is there an adverse interest? Does a trustee owe a duty to the individual partners in a partnership if he's representing the partners? I'm sorry, if he represented... What, if any, duty does a trustee owe to individual partners if he is representing the partnership? The trustee doesn't necessarily owe a duty to the individual partners. The trustee's duty is to the partnership and the bankruptcy estate itself. What do you mean necessarily owes a duty? He doesn't owe any duty to the individual partners. Suppose there have been 10,000 partners, as there are in many partnerships. He can't go around taking everybody's temperature. His duty is to the partnership. There are only two partners. Presumably their interests are aligned with the partnership. One would assume that would be the case, and in this particular case there were four partners and their interests weren't aligned necessarily. Doesn't it happen all the time that in partnerships, different partners have different interests and the obligation of a fiduciary to the partnership is to do what's best for the partnership as a whole, not for each individual partner? Isn't that the basic rule here? That's the absolute rule, and that's the standard. If we look at the trustee's duties... So your first answer, temporizing, that he didn't necessarily owe an obligation to the individual partners is just wrong. He owes no obligation to the individual partners. His obligation is to the partnership. That's correct, Justice. Thank you for correcting me. I just wanted to be clear. Could I go back to a question that touched pain, asked your colleague, and because we're so enthused about this case, your colleague doesn't get much chance to answer, and neither have you, so maybe I'll give you a minute here. And that was, how did he think that representation of the creditors was hurting his client? And as I understand it, this is what my guess was, that he wanted to get as much money as possible for the asset, and he was worried that the creditors would want to stop the valuation as soon as their debt was paid off, that they didn't care about optimizing the amount gotten. Is that what you think the answer to that question is? That's my understanding of the argument that's been raised, but we don't believe that argument. So in other words, if he owed $400,000, they were happy to have our $2 million. They were happy to sell it at $2 million, and they didn't care about what else happened, getting any higher. That's what we believe their argument to be, but I don't believe that that is the case in this particular situation. It seemed to me that there was some evidence in the record, and perhaps you could point to it more specifically, that the trustee actually asked for more time for the sale in order to increase the value of the property. The value of the property did, as we know, move from $15,150 up quite a ways. The trustee began marketing the property in March of 2010 and marketed actively for the next two months until it received an offer and filed a motion to sell on May 24, 2010, and that was for the $1.2 million debt. It later received a $1.3 and a $1.35 million upset bid. What happens in that particular situation was it was set for an upset bid or a private auction before the court at a later time, and that was in July of 2010. I want to get back to this issue of estoppel here in a moment because it sort of ties in with what we're talking about, but when we look at this in July of 2010, the sale was halted because Alex Romney filed a motion to dismiss the bankruptcy proceedings. The sale had to be rescheduled. When they finally went to an auction in September of 2010, and this was a private auction, it actually sold for the price of $3 million, and what we can garner from the fact that it was a private auction is at some point in time the other bidders dropped out of this particular bidding process because the value had reached what the market would bear on the particular piece of property. What does the record say about whether the marketing effort continued during this whole time that the process was delayed by virtue of Mr. Romney's motion to dismiss the bankruptcy petition? The record does not have a lot of information on the marketing efforts that continued. It was essentially in a stall pattern at that point because the notice of upset bids had been filed and the private auction had been scheduled and it needed to be rescheduled. At any given time during this, additional bids could have been received by those people who were part of the private auction. What's a private auction? I'm not sure I'm up to speed on that term. It's essentially a situation that's used in a bankruptcy court where you have one bid, then you have subsequent. It could be another upset bid or it could be multiple upset bids where the people who have initially placed a bid on the property have a time and place to meet and conduct an auction. So it would be similar to Justice Moses' talk of a public auction at a courthouse step but a little different. So it is a private auction? It is a private auction and it's held in private between the people who have made the bid. So the people who have expressed an interest have the option to come and bid at this auction. What was the purpose of the trustees hiring a realtor to market the property if not to increase the value? That was the purpose of the trustee hiring a realtor. That was to market the property so that the trustee could obtain the best value for the property to the satisfaction of the creditors and other parties in interest. Is this raw land? It was raw and undeveloped land. That's correct. What does the record say about the value of the surrounding properties on which Mr. Romney bases his contention that it was worth more than that? What does the record say about what kind of property were those surrounding properties that were valued in the tens of millions? The record of the surrounding properties would demonstrate that it was approximately $16.2 million, but that was submitted after the sale. Are they also raw land is what we're getting at? Or they developed the surrounding properties? They are raw land as well, but we're looking at different parcels of land, different sizes in different locations, and it's based on tax assessment values, not appraisals of the property. So the values were unreliable. Was there ever any correlation? Was it ever valued comparably per acre, that is, the property that was for sale versus the properties that were the comparables that he wants to go by? No. I know that if the acreage is different, the total value is different, but what's the per acre value? Is there any evidence on that? No, there's not any evidence on that. And if there were, it should have been presented at the time of the hearing on the motion for the sale, at the time of the objection made by Alex Romney as to the sale itself. But when we look at his objections, when we look at the timeline, this brings me back to the estoppel argument that I wanted to address briefly earlier. Alex Romney, during the course of this proceeding, had several opportunities to make objections as need be that would have been appropriate for the particular situation. Yeah, but isn't a finding on estoppel a question of fact? Wouldn't we have to remand if we were going to go on estoppel? Seems to me you have a lot of easier arguments. You could remand with directions to the bankruptcy court. Well, directions to determine whether there's been an estoppel, not a direction to find an estoppel, because that would be a finding of fact. That's correct. We believe that estoppel is an issue in this particular case, though, and he should be estopped from it because of his opportunities to raise these objections, certainly prior to the sale, when he knew of what he believed to be an apparent conflict and could have done this certainly to prevent any justifiable reliance by any party, the trustee or the bona fide purchasers of this property, so that we wouldn't be running into this particular problem. There is also the issue of Mr. Romney's motivations that we have to consider in this particular case as well. There was an original bankruptcy petition filed by Bonaire in 2009 which was subsequently dismissed. Why do we have to consider that? It demonstrates the reasons why we're before this court to begin with and the lack of or the disingenuousness of the argument presented by Alex Romney. Essentially, he halted the foreclosure sale with filing a bankruptcy which was dismissed. I really think that it's been summed up by the bankruptcy court when it said over the course of nearly a year, the debtor's twice thwarted attempts by Jefferson Security Bank  Yes, the bankruptcy court summed it up nicely and I believe the district court also affirmed that and moved forward in putting us in the posture we're in now. When we look at all of these aspects, the motivations, the particular establishment, it brings us to the crux of the case and that all comes back to Section 327 and what the situation is. A person is not disqualified solely because of a representation of a creditor unless there is an objection by another creditor. Well, more importantly, even if there were disqualification, it wouldn't necessarily or even probably lead to setting aside the same. It would not and it could not at this particular point in time because we have that arm's length transaction to a bona fide purchase. So when we look at Brewer v. Johnson, the trustee could employ a creditor's attorney as long as there's no actual conflict of interest, then that is not a problem and an actual conflict of interest is an active competition between two interests. There was no active competition between two interests in this particular case because the interests were in separate cases and they were for separate debts and separate collection purposes. Is this bankruptcy still going on? Has it been wound up? It has not been wound up and it cannot be wound up until the trustee makes the final distribution of the proceeds that are remaining in escrow. And currently the trustee holds approximately $1.8 million in escrow awaiting final distribution. And there are other judgments that have been filed in this bankruptcy against creditors of Alex Ramey himself to attach any particular receipts of monies he may receive in the final distribution. So there is no winding up of the bankruptcy until this court makes a ruling and it becomes final for whatever appellate channels can be followed from that point forward. So for the reasons we've talked about, despite the fact that Alex Ramey would like this court to believe that there is a conflict of interest and that there is some tension between Wells Fargo's employment of McNair, Houghton, McMunn and Varner against Alex Ramey and... I think we understood your argument. Thank you very much. For those reasons we request that you respectfully deny the position. Thank you. I'd like to go back to the disinterestedness requirement of the code. I think the question that to me is most important in this case is, what's the purpose of that and does it matter? First of all, I think it's important that appellate was a party in interest in this case. A party in interest means anyone who has a legally protected interest that could be affected by a bankruptcy proceeding. That's out of N. Ray James Wilson Associates, case on the 7th circuit in 1992, 962 Fed 2nd at 160. It doesn't matter that he was a party in interest. Rule 2014 states that the application, and this is where the problem should have been made known to the court, and the court could have done something about it had the disclosure been proper at the time. The application shall state to the best of the applicants, that's the trustee's knowledge, all of the persons, that's his law firms, connections with the debtors, creditors, and any other party in interest. At the time, didn't your client know about the relationship between all of the relationships that are at issue here? I think my client, as a lay person, I'm sure he was aware that this was the law firm. That's true. But does that excuse... He was being sued. I'm sorry? He was being sued. That's right. So he could have objected to the appointment, and he didn't do that, and why isn't that a waiver under any definition of the term? I guess then you get to the question of whether the disinterference and the disclosure requirements in the law can be waived, and I don't believe they can. I believe that it's a necessary foundational qualification of the trustee that he be disinterested, not only at the outset of the case, but throughout the case. And if such time comes that he's not disinterested, that paints the whole process. That's the reason why. Not waiving the requirements. What you waived is the point that you're making now. That we can't object to. You sat on your rights. You let everybody do what they were going to do. You let everything develop, and so he did. His client did, and why isn't that also a waiver as well that's effective? Well, if the interest in assuring that the trustee is going to be impartial, is going to be above reproach, if that's an interest that's peculiar to my client, then I think maybe you're right. But that's not what the purpose of the disinterestedness requirement is. That's not what the purpose of the disclosure requirements are. Mr. Simpson, what do you do, though, with the express provision in the code that says a person is not disqualified for employment simply because of such person's employment by or representation of a creditor? A creditor, that provision doesn't apply to this case. That provision applies where the professional attorney or accountant or whatever is representing another creditor in the bankruptcy case. This wasn't a creditor. But the conflict arises because the law firm represented a creditor. A creditor of an individual equity holder in the debtor corporation. There's a distinction there. And the difference is that because the creditor is... So it's not even... You don't even have to have an exception to the general bankruptcy code because they're a different party. I'm sorry? I'm just saying the rule doesn't apply to a creditor of one of the individuals who's not a party to the bankruptcy. Well, I think you make a fair point that they're different parties. But if they're different parties for that provision, they have to be different parties for conflict provision, too, for the general conflict provision. You can't slip in and out of being the same party. Whether the exception that provides that 327C that allows the other creditors to basically consent or do what I think Judge Payne was talking about, allow the representation to go to him. I'm not talking about consent. I'm sorry? I'm not talking about consent. I'm talking about getting under the provisions. I'm trying to get your claim under some provision of the bankruptcy code, your claim about conflict here. It doesn't seem to fit nicely into any one of them. Indeed, it seems to me that the code is written so it would permit the same person, same entity, to represent both the bankrupt estate and a creditor of the bankrupt estate. That's not even the situation here. Here it's representing a creditor of somebody that has an interest in the bankrupt estate. I think we're getting a little bit off track with the application. That's exactly what you have, isn't it? I don't know exactly how that's off track. Let me try to explain that. We're getting a little bit off track with respect to the application to hire the lawyer who's basically the law firm, the trustee. The real concern here that we've raised is the trustee himself is not disinterested. By virtue of that, basically, it would be an imputed conflict of interest in his law firm. And just to make a point, and my time is just about up, 101.14 defines disinterested person under 101.14C as a person who does not have an interest materially adverse to the interest of the estate or its equity holders. So by definition, that law firm and the trustee, by virtue of his membership in that law firm, have a materially adverse position to at least one of the equity holders in this entity. If it's materially adverse. If it's materially adverse. Thank you very much.
judges: Diana Gribbon Motz, Allyson K. Duncan, Robert E. Payne